**Affirmed in part; Reversed in part and Opinion Filed March 25, 2022**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

### No. 05-20-01052-CV

**APPLE TEXAS RESTAURANTS, INC., Appellant**
**V.**
**SHOPS DUNHILL RATEL, LLC, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-10664**

## MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Garcia
Opinion by Justice Carlyle

Shops Dunhill Ratel, LLC (Dunhill) filed this lawsuit against Apple Texas Restaurants, Inc. (Apple) seeking unpaid rent under a commercial lease agreement. Apple counterclaimed for breaches of the lease and an amendment. The jury found (1) both parties committed breaches, (2) Apple's breach caused $364,066.69 in damages to Dunhill, and (3) Dunhill's breach caused no damages to Apple. Following a bench trial on attorney's fees, the trial court signed a judgment awarding Dunhill the damages found by the jury, attorney's fees of $611,605.00, and contingent appellate attorney's fees of $70,000.00.

Apple contends the trial court erred because (1) the evidence is legally and factually insufficient to support the jury's finding that Dunhill's breach caused Apple no damages, (2) the incurred attorney's fees awarded to Dunhill improperly included defensive fees that Dunhill failed to plead for, and (3) the award of conditional appellate attorney's fees to Dunhill is not supported by legally sufficient evidence.

We reverse the trial court's award of conditional appellate attorney's fees to Dunhill and remand this case to the trial court for further proceedings regarding those fees. We otherwise affirm the trial court's judgment in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Background**

In 2012, the parties entered into a lease agreement under which Apple leased space from Dunhill to operate an Applebee's restaurant in a Bedford, Texas shopping center. Parking at the shopping center is "tight" and became a concern for Apple. In February 2015, the parties signed a lease amendment addressing parking issues.

Dunhill filed this lawsuit against Apple in August 2016, asserting claims for breach of contract and declaratory judgment based on Apple's non-payment of rent and requesting attorney's fees pursuant to the lease for each claim.[1] The petition's prayer contained a general request that Dunhill be awarded attorney's fees. In

---

[1] Lease section 13.08 stated, "In the event either party brings suit to enforce or interpret any part of this lease, the prevailing party shall be entitled to recover as an element of its cost of suit, and not as damages, all reasonable attorney's fees actually incurred."

September 2016, Apple asserted counterclaims against Dunhill for breach of contract and declaratory judgment based in part on alleged violations of the amendment.

Apple sought, among other things, a declaration that Dunhill had defaulted under the amendment and "that Lessor is liable for the costs Lessee incurred as a result of Lessor's failure to provide the requisite number of exclusive parking spots required by the [amendment]." Apple also contended Dunhill breached its obligations "by failing to provide Lessee the requisite number of parking spaces required by the [amendment]" and "[a]s a result . . . Lessor has caused Lessee damages for which it seeks recovery, including the cost of security hired to enforce Lessee's rights to the exclusive and shared spaces assigned to Lessee in the [amendment]." Additionally, Apple sought to recover reasonable attorney's fees "pursuant to the Lease and applicable law."

Dunhill filed a general denial answer to Apple's counterclaims. In November 2017, Dunhill amended its answer and filed an amended petition in which it repeated its attorney's fees requests and prayer for relief from its original petition.

In its October 31, 2019 verdict, the jury found Dunhill had breached the amendment but that the breach caused Apple no damages. The jury also found Apple failed to comply with the lease and Dunhill's resulting damages were $364,066.69.

Apple filed a motion for judgment notwithstanding the verdict, contending among other things that "[t]he jury found that Dunhill failed to comply with the [amendment], including its obligations to work with Apple in enforcing the

'exclusive nature of the Exclusive Spaces'" but then "improperly declined to award Apple its uncontroverted damages for Dunhill's breach." According to Apple, "the evidence conclusively demonstrates that Apple is entitled to an award of $25,191.92." The trial court denied that motion.

Apple filed a timely motion for new trial which, among other things, restated its argument that "the jury's finding that Apple incurred zero damages" lacks legally sufficient supporting evidence. Apple also asserted the evidence is factually insufficient to support that finding. The motion for new trial was overruled by operation of law.

## The jury's no-damages finding

In a legal sufficiency challenge, we consider whether the evidence at trial would enable a reasonable and fair-minded factfinder to reach the verdict under review. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Id*. In making this determination, we view the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable

fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 827.

In a factual sufficiency challenge, we review all the evidence and will set aside the finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We may not pass upon the witnesses' credibility or substitute our judgment for that of the factfinder, even if the evidence would clearly support a different result. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

Apple first argues the jury's finding of Dunhill's breach in Question No. 4 but no damages for breach in Question No. 5 "lacks legally and factually sufficient supporting evidence because Apple proved its damages and Dunhill tendered no controverting evidence." The court submitted a broad-form question on breach at Apple's request: Question No. 4 "Did Shops Dunhill Ratel, LLC fail to comply with the [amendment]?" The court did so despite Dunhill's objection and insistence that the court should submit separate questions because Apple alleged in its counterclaims that Dunhill breached the amendment by not providing the requisite number of parking spaces and by failing to cooperate.

As noted, the parties signed an amendment to the contract, which contained six numbered sections. Section one stated that Apple "will be provided with" thirty-seven exclusive parking spaces in specified areas of the shopping center. Section two

required Dunhill to install curb bumps in front of each exclusive space. Section three required Dunhill to stencil the exclusive spaces as Applebee's parking within seven days of the amendment's effective date. Section four required Dunhill to maintain the curb bumps and stencils at its cost. Section five, titled "Parking Enforcement," stated:

> Landlord and Tenant will work together to enforce the exclusive nature of the Exclusive Spaces . . . . Tenant may use a warning for first time offenders and may keep track of license plates of offenders. After the first warning, progressive warnings may be given. If there are multiple offenders within a sixty (60) day period, Landlord agrees to promptly work with Tenant to help resolve the issue, including placing towing signs in the parking lot of the Shopping Center.

Section six stated in part, "The parties intend for the provisions of this [amendment] to control over any conflicting provisions of the Lease and to become part of the Lease . . . . Except as expressly set forth in this [amendment], the terms and conditions of the Lease remain unmodified and in full force and effect."

Apple's live pleading stated:

> 11. Paragraph 1(b) of the [amendment] required Lessor to provide Lessee with 37 exclusive parking spaces stenciled "Applebee's Parking Only" with curb bumps stenciled "Applebee's Parking." Subsequent to the execution of the [amendment] and without notice to Lessee, parking spaces designated Applebee's spaces were restenciled "MK's Sushi" spaces. As a result, Lessee no longer had the 37 exclusive spaces guaranteed by Paragraph 1(b) of the [amendment].
> . . . .
> 13. Paragraph 5 of the [amendment] requires Lessor to promptly work with Lessee to help resolve the parking issues. By letter dated December 9, 2015, Lessee demanded that Lessor promptly work with Lessee to help resolve the parking issues. Lessor ignored the request. Lessor's failure to take action to enforce Paragraph 1(b) within ten days

of notice of the violation entitled Lessee to institute its own enforcement and deduct the costs of cure from amounts due Lessor.

14. Lessee's security had to direct non-Applebee's patrons not to park in spaces dedicated to Applebee's. Because Lessor failed to act on its obligation "to promptly work" with Applebee's as required by Paragraph 5 of the [amendment], Lessee's self help expenses should be offset against amounts due Lessor or Lessee should be awarded damages in that amount.

Apple's trial evidence addressed breach of these three duties, including evidence that it incurred $25,191.92 in "security costs" to enforce parking exclusivity, yet Apple sought no damages regarding the stenciling-related complaints and presented no evidence of such damages. Apple executive Chris Dharod acknowledged in testimony that Dunhill "never agreed to reimburse" Apple for "private security to police the parking lot," but he stated Apple has a "right to seek to recover that from [Dunhill]" because the amendment "says that the landlord will work with us promptly."

Dunhill's executive vice president and general counsel Timothy Denker acknowledged that the original stenciling of the exclusive parking spaces was not completed within the amendment's required time period. He also stated that when Dunhill became aware of the improperly re-stenciled parking spaces described above, it corrected the stenciling to again say "Applebee's Only." He further testified:

> Q. Now, Dunhill did undertake to promptly work with tenant to help resolve issues. True?
> A. True.
> . . . .

Q. . . . Did Dunhill work with Apple Texas to enforce the exclusive nature of Applebee's parking spaces?
A. Yes, we worked with them.
Q. Tell me what you did to try to work with Apple Texas in the enforcement of its parking spaces.
A. Sure. So first we striped it, as requested, as required. Then we allowed towing signs to be put up. Apple Texas was still not happy with what was going on. They said people are parking in our spots. . . .

Eventually, they hired a security guard . . . that would say, hey, please move your car if you're not going into Applebee's.

Finally, we agreed to as a shopping center, as a whole, take over the responsibility for that security guard. And I believe the security guard is there today, doing the exact same thing.
Q. Did Dunhill undertake, through the first amendment of the lease, an obligation to provide security to enforce the parking?
A. No, we did not.
Q. But it's your testimony that eventually you went ahead and did that anyway.
A. Yes. I mean, we're in the business of tenants making money and them paying their rent to us. I mean, that's what we do. And if we can help a tenant out in a way, then we do.

A reasonable factfinder could credit this testimony, which constitutes more than a scintilla of evidence that Dunhill complied with section five. *See City of Keller*, 168 S.W.3d at 827.

And we cannot agree that Apple's security-costs evidence conclusively established noncompliance with the amendment as a whole when that evidence only pertained to section-five breach. *See id.* The trial testimony described breaches of provisions of the amendment other than section five, and the Apple-requested, broad-form Question No. 4 in the jury charge did not require specificity as to which alleged section or sections the jury found Dunhill to have breached. Moreover, in Question No. 5, the jury was instructed to consider only the "reasonable and

necessary cost to enforce the exclusive nature of the Exclusive Spaces and of the Shared Spaces" and no other "elements of damages." To the extent the breach the jury found in Question No. 4 involved only provisions of the amendment other than section five, the jury's answer of zero damages in Question No. 5 is entirely consistent with that finding and supported by legally and factually sufficient evidence. *See Gunn*, 554 S.W.3d at 658; *Mar. Overseas Corp.*, 971 S.W.2d at 407. Thus, we disagree with Apple's position regarding the jury's finding of zero damages.

**Attorney's fees**

In its second issue, Apple asserts "the trial court's award of attorney's fees is improper because it includes defensive fees even though Dunhill never filed any pleading for them."

After trial, and in addition to its live pleading, which included in the prayer a request for fees, Dunhill filed an "Application for Attorney's Fees, Costs, and Expenses," asserting in part that under section 13.08 of the lease, it was entitled to recover its reasonable attorney's fees, including conditional appellate attorney's fees, "incurred in prosecuting its claims and defending against Apple's counterclaims." Dunhill sought approximately $611,000.00 in attorney's fees, plus $35,000.00 in conditional appellate attorney's fees in the event of an unsuccessful appeal by Apple to the court of appeals and $35,000.00 in conditional appellate attorney's fees in the event of an unsuccessful appeal by Apple to the Supreme Court of Texas. In support

of its application, Dunhill filed a declaration of its counsel, Michael Gardner, and several supplements to that declaration. Apple responded, arguing in part (1) "Dunhill's evidence fails to demonstrate that the fees were reasonable and necessary under Texas law" and (2) Dunhill is not entitled to defensive attorney's fees because it "failed to request attorney's fees for defending the parking claim in its pleadings."

Following a bench trial on attorney's fees, the trial court signed an October 21, 2020 judgment awarding Dunhill the damages and trial attorney's fees described above, plus conditional appellate attorney's fees in the amounts Dunhill had requested for each level of appeal. The court granted Dunhill's requested declaratory relief and denied Apple's. The judgment stated the attorney's fees pertaining to Apple's counterclaims were awarded pursuant to lease section 13.08.

A trial court may award attorney's fees on a breach-of-contract claim when authorized by statute or by the parties' contract. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). Whether attorney's fees are available is a question of law we review de novo. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam). If we determine that a party was entitled to an award of attorney's fees, we then review the trial court's award for an abuse of discretion. *Brinson Benefits, Inc. v. Hooper*, 501 S.W.3d 637, 641 (Tex. App.—Dallas 2016, no pet.).

***The trial court's award of defensive attorney's fees to Dunhill***

The purpose of pleadings is to give adverse parties notice of each party's claims and defenses, as well as notice of the relief sought. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000); *see also* Tex. R. Civ. P. 301 ("[t]he judgment of the court shall conform to the pleadings"). Texas follows a "fair notice" standard of pleading, meaning we look to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Daugherty v. Highland Capital Mgmt., L.P.*, No. 05-14-01215-CV, 2016 WL 4446158, at *3 (Tex. App.—Dallas Aug. 22, 2016, no pet.) (mem. op.). "A general request for attorney's fees in the prayer of the pleading is itself sufficient to authorize the award of attorney's fees." *Tull v. Tull*, 159 S.W.3d 758, 762 (Tex. App.—Dallas 2005, no pet.); *accord Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 915–16 (Tex. 2015).

The record shows that after Apple filed its counterclaims, Dunhill filed an amended petition in which it repeated (1) its assertions under each count that it "is entitled to recover reasonable and necessary attorney's fees and costs pursuant to section 13.08 of the Lease" and (2) its general prayer for attorney's fees. Apple's reliance on the lease in its own request for attorney's fees shows it was familiar with section 13.08, which provided for prevailing party attorney's fees. On this record, we cannot agree with Apple that no pleading supported Dunhill's recovery of defensive fees. *See Daugherty*, 2016 WL 4446158, at *3.

Moreover, we disagree with Apple that awarding defensive fees based on Dunhill's post-verdict fee application would have constituted an abuse of discretion. The record does not show Apple contended that the fee application was "prejudicial on its face" in the trial court. On that basis alone, we can reject its issue. *See Good v. Baker*, 339 S.W.3d 260, 267 (Tex. App.—Texarkana 2011, pet. denied).

But assuming without deciding that Apple preserved this complaint for appellate review, merely asserting a new cause of action does not make a trial amendment prejudicial to the opposing party as a matter of law. *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 749 (Tex. App.—Dallas 1996, writ denied). We must evaluate the amendment in the context of the record of the entire case. *Id*. Among other requirements, the new matter asserted must be such that it could not be anticipated by the opposing party in light of the development of the case up to the time the amendment was requested. *Id*.

Here, in addition to both parties' repeated reliance on section 13.08 described above, Dunhill provided disclosure responses more than a year before trial describing its counsel's expected testimony regarding defensive attorney's fees, stating, (1) Dunhill "is entitled to damages pursuant to the Lease . . . and interest, attorneys' fees, and costs," and (2) its counsel "is expected to testify regarding the reasonableness and necessity of attorneys' fees and costs related to the prosecution of Plaintiff's claims . . . and defense against Defendant's counterclaims." On this

record, we cannot conclude the trial amendment in question could not have been anticipated. *See id*. Additionally, based on those same disclosure responses, we cannot agree with Apple's contention that it demonstrated "surprise and prejudice." Again, assuming Apple preserved the issue, we would also conclude the trial court did not abuse its discretion to the extent it determined Dunhill's post-verdict fee application supported defensive attorney's fees.

### *The trial court's award of conditional appellate attorney's fees to Dunhill*

In its third issue, Apple asserts the trial court's award of conditional appellate attorney's fees is not supported by legally sufficient evidence because "Dunhill's witness provided only a conclusory statement of the total anticipated amount of those fees," and contends this case is exactly like a recent Dallas case, *KBIDC Invs., LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *23–24 (Tex. App.—Dallas Oct. 9, 2020, pet. denied) (mem. op.). Apple claims we must reverse the award of appellate attorney's fees to Dunhill and "either enter a take-nothing judgment or remand for a new trial on fees." We conclude we can reverse and remand the appellate-fees issue for redetermination.

"When fee-shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019). At the point when contingent appellate attorney's fees are awarded by the trial court, "any appeal is still hypothetical" and "[t]here is no certainty

–13–

regarding who will represent the appellee in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). Nevertheless, "this uncertainty does not excuse a party seeking to recover contingent appellate fees from the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id*.

Though Dunhill's counsel's declaration addressed Dunhill's incurred attorney's fees in detail, including hourly rates for each attorney, the only statements in the declaration regarding contingent appellate attorney's fees were as follows:

> Dunhill will be required to incur additional attorney's fees if Apple appeals the final judgment entered in this Action. In my opinion, Dunhill will likely incur at least $35,000 in reasonable and necessary attorney's fees if Apple appeals the final judgment to the Court of Appeals. In addition, Dunhill will likely incur at least an additional $35,000 in reasonable and necessary attorney's fees if Apple appeals the final judgment to the Texas Supreme Court and Dunhill is required to respond thereto.

Because Dunhill's attorney's fees evidence does not address "the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services," the evidence is legally insufficient to support the trial court's award of conditional appellate attorney's fees. *See id*.; *KBIDC Invs*., 2020 WL 5988014, at *24. Thus, we must reverse the appellate attorney's fees award to Dunhill based on case law handed down after the trial and fee award.

–14–

"When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when . . . the interests of justice require a remand for another trial." *See* TEX. R. APP. P. 43.3. Like this Court in *KDIBC Investments*, several of our sister courts of appeals that have reversed contingent appellate attorney's fees awards based on *Yowell* have remanded instead of rendering a take-nothing judgment. *See KBIDC Invs.*, 2020 WL 5988014, at *24; *Jimmie Luecke Children P'ship, Ltd. v. Droemer*, No. 03-20-00096-CV, 2022 WL 243162, at *8 (Tex. App.—Austin Jan. 27, 2022, no pet. h.) (mem. op.) (listing Texas courts of appeals' opinions remanding after *Yowell*-based reversal). Based on the circumstances here, we conclude the appropriate disposition is to remand the issue of appellate attorney fees to the trial court for redetermination. *See Droemer*, 2022 WL 243162, at *8.

*   *   *

We reverse the trial court's award of conditional appellate attorney's fees to Dunhill and remand this case to the trial court for further proceedings limited to redetermining those attorney's fees. We affirm the trial court's judgment in all other respects.

201052f.p05

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

–15–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

APPLE TEXAS RESTAURANTS, INC., Appellant

No. 05-20-01052-CV     V.

SHOPS DUNHILL RATEL, LLC, Appellee

On Appeal from the 160th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-16-10664. Opinion delivered by Justice Carlyle. Justices Smith and Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** the trial court's award of conditional appellate attorney's fees to appellee Shops Dunhill Ratel, LLC and **REMAND** this case to the trial court for further proceedings limited to redetermining those attorney's fees. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 25th day of March, 2022.