**Affirmed and Opinion Filed December 28, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-21-00172-CV
_____

### SOUAD SHRIME, Appellant
### V.
### LENN KAPTAIN D/B/A LENN KAPTAIN REALTORS, Appellee

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-18-06324-D**

## MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Pedersen, III

In the trial court, Souad Shrime brought suit—in both her individual capacity and as trustee of the Shrime 2012 Irrevocable Trust (the Trust)—against real estate broker Lenn Kaptain d/b/a Lenn Kaptain Realtors (Kaptain). After rendering a partial summary judgment, and incorporating the jury's findings, the trial court signed a judgment making the following awards:

- The Trust to recover $1900 from Kaptain;

- Shrime, individually, to recover $15,000 in attorney's fees from Kaptain; and

- Kaptain to recover $60,000 in attorney's fees from Shrime, individually.

The trial court then signed a nunc pro tunc order, correcting the award of $15,000 in attorney's fees owed by Kaptain; the fees were intended to be paid to the Trust, not to Shrime individually.[1]

Shrime appeals, arguing that (1) she should be recognized as the only prevailing party, (2) the trial court erroneously granted a partial summary judgment in Kaptain's favor on her breach of contract claim, and (3) the jury's negative answer to the question on fraud liability is not supported by factually sufficient evidence.[2] We affirm the trial court's judgment.

## Background

Shrime, individually, and Kaptain entered an agreement (the Listing Agreement), providing that Kaptain would locate a tenant for a condominium property owned by the Trust. Kaptain proposed Christopher Stone as the tenant, and Shrime signed a lease with Stone (the Lease).

---

[1] The trial court may at any time correct a clerical error in the record of a judgment through an order nunc pro tunc. TEX. R. CIV. P. 329b(f). The record is unclear as to whether Kaptain has already paid the fee award and, if so, to whom. Shrime, of course, may only collect the fees in one capacity. We reject Shrime's counsel's argument that her "capacity doesn't matter" in this case.

[2] Initially, both Shrime and Kaptain filed notices of appeal in this case. This Court aligned the parties, designating Shrime as appellant/cross-appellee and Kaptain as appellee/cross-appellant. Subsequently, Kaptain dismissed his cross-appeal.

Shortly after the Lease was signed, Stone was terminated from his job, for which he had been paid a salary of some $200,000 annually. Stone declared bankruptcy, but Shrime was able to obtain a judgment against him for $8,300 for unpaid rent and attorney fees.

Shrime then sued Kaptain, urging claims for breach of the Listing Agreement, fraud, breach of fiduciary duty, and negligent misrepresentation.[3] The trial court granted a partial summary judgment in favor of Kaptain on the claim for breach of the Listing Agreement. The remainder of the claims were submitted to the jury after trial. The jury found in favor of Shrime in at least one capacity on all claims except fraud. However, the only damages awarded by the jury were to Shrime as trustee for Kaptain's breach of fiduciary duty.[4]

The trial court held a separate bench trial on attorney's fees. The court ultimately awarded Shrime, as trustee, $15,000 in fees and Kaptain $60,000 in fees, as well as contingent fees for appeal.

Shrime's motion for new trial was denied. This appeal followed.

## The Breach of Contract Claim

In her second issue, Shrime argues that the trial court erroneously granted Kaptain's motion for summary judgment on her breach of contract claim. We review

---

[3] Shrime also pleaded claims for declaratory judgment and deceptive trade practices, but those claims were never put to a ruling by the court or jury.

[4] Kaptain has paid that award of $1900 to the Trust.

–3–

orders granting summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). With respect to a traditional motion for summary judgment, we require the movant to demonstrate the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant satisfies this burden, the nonmovant can avoid summary judgment if she demonstrates a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. We credit all evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in her favor. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002).

We look to the language of the parties' agreement to construe that agreement; we do so employing a de novo standard of review. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019). Our goal is to give effect to the parties' intentions, as expressed in their agreement. *Id.* As long as the contract's language can be given a certain or definite legal meaning or interpretation, we must construe it as a matter of law. *Id.*

*The Trial Court's Initial Ruling*

Shrime pleaded that Kaptain breached the Listing Agreement. She identified Kaptain's contractual obligation this way: "The contract provided that defendant would "**use reasonable efforts and act diligently to market the Property for lease, procure a tenant, and negotiate a lease of the Property**. In return for

–4–

procuring a tenant that was '**ready, willing, and able'** to make payments under the lease agreement, [Shrime] agreed to pay the broker fee of $1,900.00 (or one month's rent)." (All emphasis in original pleading). Shrime then identified Kaptain's purported breach: "Defendant breached the contract by failing to properly vet the tenant that plaintiff signed the lease agreement with."

Kaptain moved for summary judgment on this claim, arguing that:

(1) As a matter of law, the duty to screen prospective tenants was not imposed upon [Kaptain] by his agreement with [Shrime]; and

(2) Even if such a duty had been imposed, [Kaptain] fulfilled it by running a credit report, checking the tenant's criminal history, checking with a prior landlord, and confirming his $17,000/month employment status.

Initially, Shrime's pleading correctly identified Kaptain's contractual duty. The Listing Agreement provides: "Broker will use reasonable efforts and act diligently to market the Property for lease, procure a tenant, and negotiate the lease of the Property." Nowhere in her pleading, summary judgment response, or appellate brief does Shrime challenge that Kaptain marketed the property, procured a tenant, or negotiated a lease. It is undisputed that Kaptain performed those contractual duties.

In her summary judgment response, Shrime focused instead upon the contract's identification of the time at which Kaptain would earn his commission. The Listing Agreement provides that the commission is earned when any one of the following occurs:

(1) Landlord agrees to lease or rent the Property to anyone at any price and on any terms, whether by written or oral agreement or option;

(2) Broker individually or in cooperation with another broker *procures a tenant ready, willing, and able to lease the Property* at the Listing Price for a term stated in Paragraph 3 or at any other price or term acceptable to Landlord; or

(3) Landlord breaches this Listing. (Emphasis added.)

Shrime argued that the emphasized portion of subsection (2) imposed a contractual duty on Kaptain to procure a tenant "ready, willing, and able" to pay the rent through the term of the Lease. We disagree. The unambiguous language of the Listing Agreement indicates that this provision is limited to the issue of Kaptain's earning his commission rather than to any general obligation to guarantee a tenant of a particular financial status. Moreover, the above-quoted term establishes that, in fact, Kaptain earned his commission pursuant to subsection (1), when Shrime signed the Lease, agreeing to rent the property to Stone. That fact makes subsection (2) irrelevant to our inquiry.

To the extent Shrime's response asserted that the "reasonableness" or "diligence" of Kaptain's efforts was properly a fact question for the jury, we reject that argument as well. Kaptain offered affirmative summary judgment evidence that before he recommended Stone as Shrime's tenant, he had run a credit report, run a criminal background check, contacted a previous landlord, and confirmed with Stone's employer that Stone was—when he applied for and signed the lease— earning more than $15,000 per month, certainly enough to cover $1,900 in rent.

Shrime offered no summary judgment evidence to contradict that Kaptain had not only performed his contractual duties to market the property, procure a tenant, and negotiate a lease, he had done so reasonably and with diligence. A "trial court errs when it submits an unambiguous contract to the jury rather than construing it as a matter of law." *Barrow-Shaver Res. Co.*, 590 S.W.3d at 480 (citing *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010)).

Similarly, Shrime's reliance on any "unwritten understanding" cannot impose contractual duties upon Kaptain barring some legal authority that would allow an implied duty, and Shrime provides us with no such authority.

We conclude that Kaptain had no contractual duty to "vet" prospective tenants as Shrime pleaded. The trial court did not err when it granted Kaptain's partial motion for summary judgment on Shrime's claim for breach of contract.

*The Trial Court's Refusal to Reverse its Earlier Summary Judgment Ruling*

In this Court, Shrime's argument focuses on Kaptain's testimony at trial. She points to the instructions given by the trial court to the jury identifying the "professional canons" that governed Kaptain's conduct as a broker. She likewise relies on the document titled Information About Brokerage Services (the IABS), which was required to be provided (and was provided) by Kaptain to Shrime. The IABS sets forth a broker's duties required by law:

(1) Put the interests of the client above all others, including the broker's own interests;

(2) Inform the client of any material information about the property or transaction received by the broker;

(3) Answer the client's questions and present any offer to or counter-offer from the client; and

(4) Treat all parties to a real estate transaction honestly and fairly.

In this Court, Shrime contends that even if she was wrong about a contractual duty to vet prospective tenants, Kaptain admitted at trial that he failed to inform Shrime of material information as was required by the second duty quoted above. Shrime quotes portions of Kaptain's trial testimony in which he conceded that he had Stone's credit report that showed delinquencies and a low credit score, but he did not provide that material information to Shrime. Based on that testimony, Shrime asked the trial court in her motion for new trial to reverse its earlier ruling on Kaptain's partial summary judgment motion. The trial court denied the motion for new trial, and Shrime now asks us to reverse the summary judgment based upon Kaptain's trial court testimony.

We deny Shrime's proposed reversal for much the same reason we denied her request to reverse the ruling made on the original motion: the conduct of which Shrime complains was not governed by contractual duties imposed by the Listing Agreement. Shrime declares once without explanation in her brief that "[t]he contract between Shrime and Kaptain consisted of the listing agreement and IABS addendum." Plaintiff's petition attached the parties' Listing Agreement; she also offered a trial exhibit of the Listing Agreement; neither attach the IABS. And while

–8–

the IABS is identified as a "part of the Listing," it is apparent from that document's terms that it governs extra-contractual matters in the broker-landlord relationship. The clearest statement of this extra-contractual nature is the following warning it contains:

> **TO AVOID DISPUTES, ALL AGREEMENTS BETWEEN YOU AND A BROKER SHOULD BE IN WRITING AND CLEARLY ESTABLISH**:
>
> • The broker's duties and responsibilities to you, and your obligations under the representation agreement.
>
> • Who will pay the broker for services provided to you, when payment will be made and how the payment will be calculated.

If "the broker's duties and responsibilities" under the Listing Agreement were actually found in the IABS, there would be no need to stress the importance of reducing those agreements concerning duties to writing in the representation agreement.

Kaptain has acknowledged, as he must, that he had extra-contractual obligations pursuant to his fiduciary status. Those obligations were tried below pursuant to various common law theories. But common law fiduciary duties do not somehow supplement or extend the contractual duties to which the parties agreed in the terms of the Listing Agreement. Shrime's motion for new trial did not identify any contractual duty owed by Kaptain that he failed to perform.

*Conclusion on Breach of Contract Claim*

We conclude that Shrime failed to defeat Kaptain's summary judgment motion based on her assertion that the Listing Agreement imposed an obligation on Kaptain to "vet" prospective tenants. We conclude further that the trial court did not err by refusing to reverse its summary judgment ruling based on any trial testimony by Kaptain. We overrule Shrime's second issue.

**The Fraud Claims**

In her third issue, Shrime argues that the jury's findings in Kaptain's favor on Shrime's fraud claims are against the great preponderance of the evidence. Shrime pleaded claims for fraud in a real estate transaction, fraud, and fraud by failing to disclose a material fact. All three claims were submitted to the jury, and for all three claims the jury answered that Kaptain did not commit fraud against Shroud individually or against Shrime as trustee. Shrime's appellate argument for each claim is identical: Kaptain's own trial testimony establishes that he made false statement of fact and omitted material facts with the intent to have Shrine rely upon them. We conclude that Shrime's argument fails for two reasons.

First, Shrime's argument is limited to her allegation that Kaptain admitted making a false statement or omitting material facts. But as the trial court's charge acknowledged, those are not the only elements that needed to be found by the jury in order to find fraud: she identifies no trial testimony that establishes the necessary preponderance of the evidence establishing that Shrime relied on the false statement

–10–

(or omission) in entering into the Lease or that the false statement (or omission) caused her injury. She points to no testimony linking the contents of Stone's credit report with his losing his employment shortly after he signed the Lease. At oral argument, counsel for Shrime suggested that the jury's findings on other common law torts would suffice to show it found reliance by Shrime and injury caused by that reliance. But in the only other tort requiring a misrepresentation—i.e., negligent misrepresentation—the jury found no damages to Shrime. We cannot rely on a finding of zero damages on a negligence tort to support a finding of injury on an intentional tort.

And second, we have only a partial reporter's record with which to conduct a sufficiency review. Before he dismissed his own notice of appeal, Kaptain requested a partial reporter's record, which basically included the charge conference, the trial on attorney's fees, and three volumes of exhibits. At that point in time, Shrime could have designated "additional exhibits and portions of the testimony to be included in the reporter's record." TEX. R. APP. P. 34.6(c)(2). And even if Shrime had requested a supplement to the record later, we could not refuse her request based on its untimeliness. TEX. R. APP. P. 34.6(b)(3). Shrime never requested any further preparation of the reporter's record. She continued to rely only upon the partial record designated by Kaptain.

If an appellant chooses to rely on a partial reporter's record, she must file "a statement of the points or issues she will present on appeal and will then be limited

to those points or issues." TEX. R. APP. P. 34.6(c)(1). If an appellant complies with this rule, she will be entitled to a presumption that the partial record "constitutes the entire record for purposes of the stated points or issues" she identified. TEX. R. APP. P. 34.6(c)(4). The presumption would hold, even for an identified sufficiency of the evidence issue. *Id.* "[S]trict compliance with rule 34.6(c) is necessary to activate the presumption that the omitted portions of the record are irrelevant." *$4,310 in U.S. Currency & 1993 Pontiac Auto. Vin: £1GNW543PC723734 v. State*, 133 S.W.3d 828, 829 (Tex. App.—Dallas 2004, no pet.).

In this case, however, Shrime did not file a complete record on appeal nor did she file a statement of the points or issues that she intended to present on appeal as required by rule 34.6(c). Accordingly, Shrime is not entitled to that rule's presumption that the partial record before us is the entire record for her appellate issues. TEX. R. APP. P. 34.6(c)(4). Ordinarily, an appellate review of the sufficiency of the evidence requires a complete reporter's record. *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991) (per curiam). When the reporter's record is incomplete, the reviewing court must presume that the missing testimony supports the trial court's judgment. *Id.* Accordingly, in this case we must presume that the omitted portions of the reporter's record are both relevant and support the trial court's judgment. *See $4,310 in U.S. Currency*, 133 S.W.3d at 829; *Huber v. Agnew*, No. 05-16-00963-CV, 2017 WL 2464681, at *1–2 (Tex. App.—Dallas June 7, 2017, no pet.)(mem. op.).

For either or both of these reasons, we overrule Shrime's third issue.

## Prevailing Party Status

The Listing Agreement contains a provision allowing the "prevailing party" in a dispute under that agreement to recover its attorney's fees.[5] In her first issue, Shrime argues that she was a prevailing party in her individual capacity on the main issue in this case.

The trial court made the following conclusions of law after the trial:

> 3. [Shrime individually] is not a prevailing party in this case.

> 4. [Kaptain] is a prevailing party on all claims brought by [Shrime] under the Listing Agreement including her breach of contract claim.

> 6. The Trust is a prevailing party on its breach of fiduciary duty claim.

Shrime contends that the trial court erroneously concluded (a) that Kaptain was the prevailing party on the breach of contract claim and (b) that Shrime individually was not a prevailing party. We review a challenge to the trial court's conclusions of law de novo to determine whether the court correctly drew the legal conclusion from the

---

[5] The provision states:

> ATTORNEY'S FEES: If Landlord or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this Listing or any transaction related to or contemplated by this Listing, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

In the trial court, both parties argued that the provision applied to the prevailing party on all claims, not only claims of breach of the Listing Agreement. The trial court treated the provision as applying to all claims. No one has appealed that understanding of the attorney's fee provision, so it is not before us.

facts presented. *Tex. Champps Americana, Inc. v. Comerica Bank*, 643 S.W.3d 738, 744 (Tex. App.—Dallas 2022, pet. denied).

Our discussion of the challenged conclusions must begin with the results of our analysis of the previous issues. We have concluded that the trial court did not err in granting—and refusing to reverse—the partial summary judgment on Shrime's breach of contract claim. Accordingly, the trial court drew the correct legal conclusion in conclusion number 4: Kaptain is the prevailing party on the breach of contract claim. We have also concluded that sufficient evidence supports the jury's negative answers—for both Shrime individually and Shrime as trustee—on the fraud claims. Accordingly Shrime did not prevail in either capacity as to the fraud claims.

As to the breach of fiduciary duty claims, the jury found that Kaptain breached his duty to Shrime as trustee and awarded the Trust $1900 in damages. Thus, the trial court's conclusion number 6 is correct.

Shrime argues she prevailed on the individual breach of fiduciary claim as well as the negligent misrepresentation claim. In both of those cases, the jury found that Kaptain had committed the proscribed conduct; but in both cases the jury awarded $0 in damages. Shrime asserts that "[t]he Texas Supreme Court has long held that a party need not recover monetary damages to be a 'prevailing party' in a lawsuit." Despite this assertion, Shrime does not cite to cases from that court standing for that proposition. In truth, the only parties that need not recover monetary damages to prevail are *defendants*. *See, e.g., Rohrmoos Venture v. UTSW DVA*

–14–

*Healthcare, LLP*, 578 S.W.3d 469, 486 (Tex. 2019) (defendant may become prevailing party by successfully defending against claim and securing take-nothing judgment on claim). Shrime, of course is the plaintiff urging these claims on which she contends that she prevailed. As the plaintiff, she must recover damages in order to be considered the prevailing party on those claims. *See Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655–56 (Tex. 2009) ("A zero on damages necessarily zeroes out 'prevailing party' status for KB Home."). Accordingly, Shrime did not prevail individually on the breach of fiduciary duty or negligent misrepresentation claims.

We conclude that all three challenged conclusions of law are correct. We overrule Shrime's first issue.

## Conclusion

We affirm the trial court's judgment in all respects, including the trial court's $15,000 award in attorney's fees to Kaptain for his defense of this appeal.

/Bill Pedersen, III//

210172f.p05
BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SOUAD SHRIME, Appellant

No. 05-21-00172-CV       V.

LENN KAPTAIN D/B/A LENN
KAPTAIN REALTORS, Appellee

On Appeal from the County Court at
Law No. 4, Dallas County, Texas
Trial Court Cause No. CC-18-06324-
D.

Opinion delivered by Justice
Pedersen, III. Justices Myers and
Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Lenn Kaptain d/b/a Lenn Kaptain Realtors recover his costs of this appeal from appellant Souad Shrime.

Judgment entered this 28th day of December, 2022.